# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
|     Plaintiff, ) | |
|     v. ) | Civil Action No. |
| APPALACHIAN POWER COMPANY and ) KINGSPORT POWER COMPANY ) | |
|     Defendants. ) | |

## COMPLAINT

The United States of America, by authority of the Attorney General of the United States and on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), files this complaint and alleges as follows:

## STATEMENT OF THE CASE

1. This is a civil action under Sections 107 and 113 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9607 and 9613, against Defendants Appalachian Power Company and Kingsport Power Company. The United States seeks to recover costs incurred in response to the release or threatened release of hazardous substances into the environment at or from the Twin Cities Iron and Metal Site located in Bristol, Virginia ("Site"). The United States also seeks a declaratory judgment, pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), that Defendants are jointly and severally liable for any future response costs incurred by the United States in connection with the Site.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to Sections 107(a) and 113(b) of CERCLA, 42 U.S.C. §§ 9607(a) and 9613(b), and pursuant to 28 U.S.C. §§ 1331 and 1345.

3. Venue is proper in this judicial district under Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391, because the releases or threatened releases that give rise to the claims occurred in this district and because the Site is located in this district.

## DEFENDANTS

4. Defendant Appalachian Power Company is a Virginia corporation located at 4001 Mayflower Drive, Lynchburg, Virginia 24501.

5. Defendant Kingsport Power Company is a Virginia corporation located at 420 Riverport Road, Kingsport, Tennessee 37660-3500.

6. Defendants Appalachian Power Company and Kingsport Power Company do business as "American Electric Power."

7. Each Defendant is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

## LAW GOVERNING CLAIMS FOR RELIEF UNDER SECTION 107 OF CERCLA

8. Section 104 of CERCLA, 42 U.S.C. § 9604, provides that whenever any hazardous substance is released into the environment, or there is a substantial threat of such a release into the environment, the President is authorized to act, consistent with the National Contingency Plan, to remove or arrange for the removal of, and provide for remedial action relating to, such hazardous substance. The President's authority under Section 104 has been delegated to EPA.

9. Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), in relevant part, provides that subject only to the defenses set forth in Section 107(b):

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility…

from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for – (A) all costs of removal or remedial action incurred by the United States Government… not inconsistent with the national contingency plan."

10. Section 113(g)(2)(B) of CERCLA, 42 U.S.C. § 9613(g)(2)(B), provides that in any action for recovery of costs under Section 107 of CERCLA, "the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages."

## GENERAL ALLEGATIONS

11. The Site is located in Bristol, Virginia and includes approximately 12 acres of land alongside 950-1000 Fairview Street, which are generally designated by the following tax parcel numbers: Parcels 29-9-1A, 29-9-1B, 29-9-6, 29-9-7A, and 29-9-7B. The Site is bordered by Beaver Creek to the west and south and by residential and commercial properties to the north and east. The Site includes portions of Beaver Creek.

12. From 1975 to 2000, the Site was operated as a scrap metal and iron yard by Poor Charlie and Company and its predecessors Raleigh Junk Company and Robert Corporation, Incorporated (collectively referred to in this Complaint as "Poor Charlie"). Poor Charlie operated the Site under the name "Twin City Iron and Metal."

13. During the early years of its operations, Poor Charlie disposed of batteries at the Site. Poor Charlie accepted batteries from various sources, broke the batteries to reclaim usable

parts, and disposed of the broken battery casings at the Site. During this process, battery acid spilled or was drained onto the ground at the Site. Both the battery casings and the battery acid were contaminated by lead.

14. From approximately 1975 until approximately 1987, Poor Charlie also accepted transformers at the Site. Poor Charlie drained oil from the transformers, removed the copper, and cut up the casings for scraps. Poor Charlie had no use for the transformer oil, and during this time period, some of the oil was drained directly onto the ground, some was spilled onto the ground as part of the metals reclamation process, and some was collected in drums for removal and off-site disposal. Some of the oil drained or spilled from the transformers was contaminated by polychlorinated biphenyls ("PCBs").

15. As a result of the operations and disposal practices at the Site, the Site is contaminated with lead and PCBs.

16. PCBs and lead are each hazardous substances as defined in Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

17. Defendants Appalachian Power Company ("APCO") and Kingsport Power Company ("Kingsport") took intentional steps to dispose of hazardous substances at the Site.

18. From approximately 1975 until approximately 1987, Defendants APCO and Kingsport sold scrap transformers to Poor Charlie as part of an ongoing arrangement.

19. Defendants APCO and Kingsport sold the transformers for scrap because they were no longer useful to the company for a variety of reasons, including storm damage, damage due to vandalism, leaks in the transformer, or transformer failure.

20. At the time of the sale of scrap transformers to Poor Charlie, Defendants APCO and Kingsport knew that some of these transformers were contaminated by PCBs. APCO and

- 4 -
Case 1:14-cv-00044-JPJ-PMS   Document 1   Filed 07/02/14   Page 4 of 10   Pageid#: 4

Kingsport did not drain some of the transformers of PCB-containing oil prior to sending them to the Site. Other transformers sent to the Site had been drained of PCB-containing oil, but still had residual amounts of the oil in the windings and the core of the transformer.

21. Defendants APCO and Kingsport also knew that disposal of any oil would be a necessary part of the metals reclamation process at the Site. APCO and Kingsport did not ask for return of the oil, and took no other steps to prevent disposal of oil contained in their scrap transformers after sale of transformers to Poor Charlie.

22. In 1984, the Virginia State Water Control Board inspected the Site and observed significant leachate from a scrap pile on the Site into Beaver Creek. In additional, battery casings were observed for approximately 120 feet along Beaver Creek. A sample of the leachate identified numerous contaminants, including lead.

23. In 1986, a Preliminary Assessment of the Site by the Virginia Department of Environmental Quality ("VADEQ") identified PCB-contaminated soil and leachate, batteries, oil soaked metal filings and scrap metal, electrical transformers, appliances, and miscellaneous metal at the Site.

24. On August 13, 1991, Poor Charlie employees lost control of a 10,000 gallon storage tank while trying to empty it using a crane. The tank contained about 500 gallons of oily water, which spilled onto the ground at the Site. The oily water originated from piles of machine turnings stored at the Site. Samples of the spill identified lead and PCB, among other contaminants.

25. In 1994, EPA conducted a Removal Site Assessment for the Site. Analytical data from soil samples revealed lead as high as 2,300 ppm and PCBs as high as 73 ppm at the Site. Based on this Site Assessment and other available data, EPA determined that actual or threatened

releases of hazardous substances posed a threat to public health, welfare, and/or the environment, and commenced a removal action at the Site (the "First Removal Action").

26.     The First Removal Action took place from 1995-1997 under an Administrative Order by Consent ("AOC") between EPA and Poor Charlie.  Pursuant to the AOC, Poor Charlie excavated and disposed of soil contaminated by lead and PCBs.  This removal action did not address contamination at the portion of the Site located near Beaver Creek.  The United States does not seek to recover costs associated with the First Removal Action as part of this Complaint.

27.     In October of 2008, VADEQ requested that EPA evaluate the source of elevated concentrations of PCBs detected in Beaver Creek in the vicinity of the Site.  While evaluating Site conditions with the owner, EPA's On-Scene Coordinator ("OSC") observed battery casings, transformer parts, and other debris on a steeply sloped embankment alongside the banks of Beaver Creek.  The OSC also observed battery casings and other debris on the sewer easement at the base of the embankment, the banks of Beaver Creek, and within Beaver Creek.  The OSC further observed soil containing battery casings and debris eroding into Beaver Creek.

28.     Soil and sediment samples at the Site revealed elevated concentrations of PCBs and lead.  Lead was detected at concentrations up to 172,000 mg/kg in the exposed surface soils at the Site based on XRF screening technology.  Laboratory analytical results of soil and sediment samples confirm concentrations of lead up to 149,000 mg/kg in the soil and up to 677 mg/kg in the sediment of Beaver Creek.  Laboratory analytical results for PCBs indicated PCB concentrations of up to 66 mg/kg in the Site soil and 2 mg/kg in Beaver Creek sediment.

29.     On September 15, 2009, EPA issued an Action Memorandum, in which it determined that threatened releases of hazardous substances from the Site posed an imminent

and substantial endangerment to the public health, welfare, or the environment and that a removal action was required.

30. EPA mobilized to the Site to begin the second removal action in October of 2009 (the "Second Removal Action"). As part of the Second Removal Action, EPA removed over 5,500 tons of contaminated soil from the Site, backfilled the excavated areas with clean fill, and hydroseeded the Site to prevent erosion. EPA left some contamination in place, covered by at least two feet of clean fill. Orange hi-vis fencing and geo-tech liner were left in place beneath the fill over the known areas of contaminated soils.

31. The United States has incurred, and continues to incur, unreimbursed costs relating to the Second Removal Action at the Site. As of January 8, 2013, EPA has incurred at least $3,102,311.51 in unreimbursed response costs.

## CLAIM FOR RELIEF

32. The allegations of Paragraphs 1 through 31 are realleged and incorporated herein by reference.

33. The Site is contaminated by "hazardous substances" within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), including lead and PCBs.

34. The Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

35. Defendant American Power Company arranged for "disposal" of "hazardous substances" at the Site within the meaning of Sections 101(29) and 107(a)(3), 42 U.S.C. § 9601(29) and 9607(a)(3), when it sent transformers containing PCB-contaminated oil to the Site.

36. Defendant Kingsport Power Company arranged for "disposal" of "hazardous substances" at the Site within the meaning of Sections 101(29) and 107(a)(3), 42 U.S.C. § 9601(29) and 9607(a)(3), when it sent transformers containing PCB-contaminated oil to the Site.

37. There have been "releases" or "threatened releases" of "hazardous substances" from the Site within the meaning of Sections 101(14), 101(22) and 107(a), 42 U.S.C. §§ 9601(14), 9601(22), and 9607(a).

38. As a result of releases or threatened releases of hazardous substances at the Site, the United States has incurred unreimbursed response costs, and continues to incur response costs, within the meaning of Section 101(25) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(25) and 9607(a).

39. The response actions taken and response costs incurred at the Site were not inconsistent with the National Oil and Hazardous Substances Pollution Contingency Plan ("NCP"), 40 C.F.R. Part 300.

40. Pursuant to Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3), Defendant American Power Company is jointly and severally liable for all unreimbursed response costs, plus accrued interest, incurred and to be incurred by the United States in connection with the Site.

41. Pursuant to Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3), Defendant Kingsport Power Company is jointly and severally liable for all unreimbursed response costs, plus accrued interest, incurred and to be incurred by the United States in connection with the Site.

42. Pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), the United States is entitled to a declaratory judgment that Defendants are jointly and severally liable for all future response costs incurred by the United States in connection with the Site.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff the United States respectfully requests that the Court:

1. Order Defendants jointly and severally to reimburse the United States for all response costs incurred and to be incurred in connection with the Site, including interest thereon;

2. Enter a declaratory judgment that Defendants are liable for all future response costs, including interest, to be incurred by the United States for response actions in connection with the Site;

3. Award the United States the costs of this action; and

4. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA

SAM HIRSCH
Acting Assistant Attorney General
Environment and Natural Resources Division

LAURA A. THOMS
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20044-7611
Tel.: (202) 305-0260
Fax: (202) 616-6583
laura.thoms@usdoj.gov

TIMOTHY J. HEAPHY
United States Attorney
Western District of Virginia

*Sara Bugbee Winn*
Sara Bugbee Winn
Assistant United States Attorney
Virginia State Bar No. 35924
P. O. Box 1709
Roanoke, VA 24008
Phone: (540) 857-2250
Sara.winn@usdoj.gov